UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY A. SCHMIDT,

    *Plaintiff*,

  v.

RICHARD V. SPENCER, Secretary,
U.S. Department of the Navy,

    *Defendant*.

Civil Action No. 14-1055 (DLF)

**MEMORANDUM OPINION**

Jeffrey Schmidt challenges a 2011 decision by the Board for Correction of Naval Records. The Board declined to reconsider a decision it made nineteen years earlier. In that 1992 decision, the Board refused to change the separations disability rating assigned by the Navy when Schmidt was discharged in 1989. Before the Court is the Secretary of the Navy's Motion for Summary Judgment. Dkt. 33. For the reasons that follow, the Court will grant the motion.

**I. BACKGROUND**

A member of the military "may be separated" from the military if a military secretary, such as the Secretary of the Navy, determines that the member is "unfit to perform [his or her] duties" due to physical disability. 10 U.S.C. § 1203(a). The secretary assesses whether the member can perform his or her duties through a physical evaluation board. *See* Disability Evaluation System, Department of Defense Instruction No. 1332.18 at 16–19 (Aug. 5, 2014). The physical evaluation board may recommend separation and certain disability ratings that affect pay and benefits upon separation. *See* 10 U.S.C. §§ 1203(b), 1212(a); Department of Defense Instruction No. 1332.18 at 18; Navy Disability Evaluation Manual, SECNAVINST

1850.4E § 3801. The "sole standard" for separations disability ratings is fitness to perform military duties. SECNAVINST 1850.4E §§ 3301, 3306. This suit arises from Jeffrey Schmidt's encounter with a physical evaluation board.

Schmidt enlisted in the United States Marine Corps in 1983. Administrative Record (AR) 18, Dkt. 30. During his time in service, he served as a field radio operator, rose to the rank of corporal, and was awarded the Good Conduct Medal and the Sea Service Deployment Ribbon. *Id.* In December 1988, a Navy physical evaluation board found that Schmidt had suffered from non-combat-related lower back pain for several years, and a water-skiing incident had caused the pain to increase in the months before the evaluation board. AR 76, 80. Due to the pain, Schmidt had been unable to run for the prior two and a half years, AR 80, and according to his commanding officer, Schmidt's injuries "ke[pt] him from participating in physical fitness tests, field duty, troop marches, any prolonged walking or standing and other activities required of the basic Marine," AR 83. The physical evaluation board concluded that Schmidt was unfit for full duty and would not be fit for full duty within a reasonable period of time. AR 76, 81. The board also rated Schmidt's lower back condition as 10% disabling. AR 76. After receiving counseling on the board's findings from a Disability Evaluation System counselor, Schmidt signed a certification stating that he accepted the findings of the physical evaluation board. AR 78.

The next month, after the Navy Judge Advocate General performed a legal review, the physical evaluation board notified the Commandant of the Marine Corps of its finding that Schmidt was unfit for duty and recommended that Schmidt be separated from the Marine Corps

under 10 U.S.C. § 1203. AR 74, 77. On March 1, 1989, the Marine Corps honorably discharged Schmidt with a 10% separations disability rating and severance pay. AR 18.[1]

Such decisions, however, are not always final. A military secretary "may correct any military record"—including records related to separations—"when the [s]ecretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). A secretary makes such corrections through civilian boards for correction, established under procedures promulgated by the secretary. *Id.* § 1552(a)(1), (a)(3)(A). Relevant here, the Secretary of the Navy's Board for Correction of Naval Records "determin[es] the existence of error or injustice in the naval records of current and former members of the Navy and Marine Corps" and "take[s] corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 723.2(b). Also, the Board for Correction may reconsider its prior decisions in certain narrow circumstances: "After final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board." *Id.* § 723.9. New evidence is "evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application." *Id.* To be material, evidence must be "likely to have a substantial effect on the outcome." *Id.*

Schmidt first availed himself of this review process when he submitted an application to the Board for Correction in 1990. AR 58. The application requested that the Board for Correction increase his 10% disability rating because the physical evaluation board's rating was

---

[1] At times, the parties refer to medical "retirement," which is generally governed by 10 U.S.C. § 1201(a). *See, e.g.*, Def.'s Mot. at 14, Dkt. 33; Pl.'s Opp'n at 10, Dkt. 37. To be medically retired when discharged, however, Schmidt needed to be at least 30% disabled, which he was not. 10 U.S.C. § 1201(b)(3)(B) (1988); *accord* 10 U.S.C. § 1201(3)(B) (current code). Accordingly, Schmidt was "separated" under 10 U.S.C. § 1203(a), not medically retired. *See* AR 74, 77.

"unjust" and his "medical evaluations were incomplete and unjust." *Id.* In support, the application noted that the Department of Veterans Affairs (VA) had assigned him a 34% disability rating, "with an upgrade pending, effective date 04-01-89." *Id.* The Board for Correction ultimately denied Schmidt's application in 1992, explaining that the higher VA rating was "insufficient to demonstrate that [Schmidt's] discharge from the Marine Corps was erroneous, because the VA, unlike the military departments, may assign disability ratings without regard to the issue of fitness for military service." AR 39.

Sixteen years later, in 2008, Schmidt asked the Board for Correction to reconsider its 1992 decision. AR 11–41; *see also* Def.'s Mot. at 3 n.1, Dkt. 33. Schmidt again challenged the physical evaluation board's 10% separations disability rating by pointing to the higher rating assigned by the VA. AR 14–16. He attached a 2007 VA letter showing that his total VA rating had increased to 100%, including a 70% disability rating for "major depressive disorder/PTSD," 40% for "degenerative arthritis of the spine," 30% for "hypertensive heart disease," and 10% for both clavicle/scapula impairment and "residuals of foot injury." AR 17. According to Schmidt, "[t]o go from a 10% service-connected military medical discharge to a 100% service-connected VA disability evaluation offends common sense." AR 15. The Board for Correction's Acting Executive Director rejected Schmidt's request for reconsideration, AR 7, but this decision was later set aside voluntarily and the request was remanded to the Correction Board for further consideration, AR 9–10.

On remand, the Board for Correction denied Schmidt's request for reconsideration in 2011. AR 1–4. The Board for Correction stated that Schmidt's request was untimely and did not present new material evidence. *Id.* The Board therefore refused to reconsider its 1992 decision. AR 3.

In 2014, Schmidt filed this action against the Secretary of the Navy, asserting that the Board for Correction's 2011 decision was arbitrary and capricious, unsupported by substantial evidence, and contrary to law. Compl. at 7, ¶¶ 2, 5, Dkt. 1.[2] The Court dismissed the action for lack of jurisdiction, Dkt. 19, but on appeal, the Secretary's counsel noted that the Court's decision may have conflicted with D.C. Circuit precedent. Therefore, the Secretary moved to vacate the Court's decision and remand for further proceedings, which the D.C. Circuit did in late 2016. *See* Dkt. 22-1; *see also Schmidt v. Mabus*, No. 15-5298 (D.C. Cir.), Doc. 1643066 (Secretary's motion), Doc. 1648618 (per curiam order). Following the remand, the Secretary moved for summary judgment in April 2017, Dkt. 33, and the case was reassigned to the undersigned judge on December 5, 2017.

## II. LEGAL STANDARDS

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. When a plaintiff seeks review of an agency decision under the Administrative Procedure Act (APA), summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA

---

[2] When Schmidt filed his complaint, Ray Mabus was the Secretary of the Navy, but Richard Spencer has since taken that position and is automatically substituted as the defendant. *See* Fed. R. Civ. P. 25(d).

standard of review." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006). "[T]he entire case . . . is a question of law" and the district court "sits as an appellate tribunal." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (quotation marks and footnote omitted).

The APA requires courts to set aside agency decisions that are arbitrary and capricious, not in accordance with law, or unsupported by substantial evidence. 5 U.S.C. § 706(2).[3] When the agency decision was made by a military correction board, judicial review proceeds "under an 'unusually deferential application of the arbitrary or capricious standard.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). This "unusual deference" arises from the statute permitting the Secretary of a military department—acting through correction boards—to correct military records "when the Secretary considers it necessary . . . ." 10 U.S.C. § 1552(a)(1); *see also Roberts v. Harvey*, 441 F. Supp. 2d 111, 119 (D.D.C. 2006). Due to that language, "[i]t is simply more difficult to say that the Secretary has acted arbitrarily . . . than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice." *Kreis*, 866 F.2d at 1514.

Accordingly, "[t]he question is not what [the court] would have done, nor whether [the court] agree[s] with the agency action. Rather, the question is whether the agency action was

---

[3] The arbitrary and capricious standard of § 706(2)(A) is a "catchall" that generally subsumes the "substantial evidence" standard of § 706(2)(E). *See Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense . . . ."); *accord Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007).

reasonable and reasonably explained." *Jackson v. Mabus*, 808 F.3d 933, 936 (D.C. Cir. 2015); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("The scope of review under the arbitrary and capricious standard is narrow and a court is not to substitute its judgment for that of the agency."). The court must determine "only whether the Secretary's decision making process was deficient, not whether his decision was correct," and "[p]erhaps only the most egregious decisions may be prevented under such a deferential standard of review." *Kreis*, 866 F.2d at 1511, 1515. "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Indeed, "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters." *Id.* (quoting *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)).

## III. ANALYSIS

To begin, a brief word about the scope of review. "It is black-letter administrative law that in an [APA] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (internal quotation marks omitted). Therefore, this Court reviews only the record before the Board for Correction in 2011 when it refused to reconsider its 1992 decision. Review is not based on extra-record documents submitted with Schmidt's opposition brief, such as an affidavit signed by Schmidt in 2017 and documents concerning the VA's disability decisions. *See* Dkt. 37-1; Dkt. 37-2.

Turning to the Board's 2011 decision refusing to reconsider its 1992 decision, the inquiry is: "Did the Board reasonably conclude that [Schmidt] had not come forward with any new and material evidence, or other matter not previously considered by the Board, that would support amendment of his record?" *Jackson*, 808 F.3d at 936; *see also* 32 C.F.R. § 723.9. The Board for Correction denied Schmidt's request for reconsideration because the request was not timely filed and was not accompanied by new material evidence. AR 1–4. Schmidt's counsel "acknowledged that [the] request was not timely," but "argued that the Board should consider it because [it] raised unspecified 'new facts, arguments and evidence.'" AR 1. The Board for Correction responded:

> The Board found your new argument to be little more than a reiteration of your previous argument, *i.e.*, that the conditions rated by the Department of Veterans Affairs (VA) after you were discharged from the Marine Corps rendered you unfit for military duty prior to your discharge, and that the Department of the Navy should have assigned the same disability ratings assigned by the VA. The Board concluded that in view of your unexplained fifteen-year delay in submitting your request for further consideration of your application, and your failure to submit significant new evidence or argument in support of that request, you have not demonstrated that it would be in the interest of justice for the Board to excuse your failure to submit the request in a timely manner.

AR 1–2. Schmidt submitted some new information, the Board continued, but the information was not material:

> Although you contend that you were unfit for duty by reason of physical disability in 1989 due to a mental disorder, cardiovascular disease, and conditions of a toe, ankle and shoulder, in addition to the unfitting back condition, you did not submit any new material evidence in support of that contention. . . . The [new] documents . . . mostly pertain to your condition after you were separated from the Navy and/or contain recitations of subjective reports concerning your military and medical history that you presented to the authors of those documents. There is no credible evidence that the findings made by the Physical Evaluation Board in your case represent anything other than fair and impartial assessments of your fitness for duty and determination of an appropriate disability rating for the condition that it determined was unfitting.

AR 2–3.

The Board's conclusion was reasonable. When requesting reconsideration, Schmidt offered evidence of VA rating upgrades that occurred after his 1989 discharge. In particular, he attached a 2007 VA letter showing that his total VA rating had increased to 100%. AR 17. He also attached letters describing his conditions, sent from private physicians to the VA in 1991, 1992, 1993, 1996, 1998, and 1999. AR 21–38. While acknowledging that the submissions were new, the Board reasonably concluded that it was not material. In other words, the new material was unlikely to substantially affect the Board's 1992 decision that the Navy did not err or inflict injustice when assigning Schmidt's separations disability rating in 1989. *See* 10 U.S.C. § 1552(a)(1); 32 C.F.R. §§ 723.2(b), 723.9. Critically, separations disability ratings require different assessments than VA disability ratings: the military and the VA use the same disability rating schedule (the VA Schedule for Rating Disabilities), but in entirely different ways. *See Stine v. United States*, 92 Fed. Cl. 776, 795 (Fed. Cl. 2010), *aff'd*, 417 F. App'x 979 (Fed. Cir. 2011); *Gay v. United States*, 116 Fed. Cl. 22, 32 & n.9 (Fed. Cl. 2014); *see also* Pl.'s Opp'n at 8, Dkt. 37 ("Granted, the Board is correct by stating that VA medical treatment is not controlling over [physical evaluation board] matters."). Separations hinge on whether a servicemember is "unfit to perform" his or her specific military duties. 10 U.S.C. § 1203(a). Thus, separations disability ratings assess a servicemember's fitness for service based on a "snapshot of the service member's condition at the time of separation from the service," and the ratings "determine what compensation the service member is due for the interruption of his military career." *Stine*, 92 Fed. Cl. at 795; *accord Jardon v. United States*, No. 10-738C, 2013 WL 677028, at *18 (Fed. Cl. Feb. 14, 2013).

In contrast, the VA "determine[s] disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world." *Stine*, 92 Fed. Cl. at

795; *see also Gay*, 116 Fed. Cl. at 32. The VA "holistically examin[es] the individual's ability to engage in civilian employment" and "evaluates and adjusts disability ratings throughout the individual's lifetime." *Stine*, 92 Fed. Cl. at 795. Due to the differences between separations disability ratings and VA disability ratings, "the rating systems . . . often produce disparate results," *Gay*, 116 Fed. Cl. at 32, and "a comparison for the sake of finding error [is] of little value," *Pomory v. United States*, 39 Fed. Cl. 213, 219 (Fed. Cl. 1997); *see also Zappley v. United States*, 135 Fed. Cl. 272, 277–78 (Fed. Cl. 2012) ("Ordinarily, then, the []VA's ratings are not particularly helpful to the [Board for Correction] in assessing whether the [physical evaluation board] made a correct rating."); SECNAVINST 1850.4E § 3802 ("Because of differences between military department and []VA applications of rating policies for specific cases, differences in ratings may result."). Accordingly, Schmidt's submissions indicating that the VA increased his VA disability rating in the decades *after* his separation do not establish that the Navy erred by assigning him a lower separations disability rating in 1989. "The military constitutes a specialized community governed by a separate discipline from that of the civilian," *Orloff*, 345 U.S. at 94, and when assigning separations ratings, "the Navy may—and routinely does—find that the []VA's higher rating is not probative due to that agency's distinct rating standard, namely the []VA's focus on the effect of the disability on the veteran's civilian employment," *Stine*, 92 Fed. Cl. at 796.

Even when examined in greater detail, Schmidt's new submissions to the Board for Correction appear no more material. *See* 32 C.F.R. § 723.9. First of all, the Board for Correction reasonably discounted the many letters sent by private physicians to the VA in the 1990s because the letters "contain recitations of subjective reports concerning [Schmidt's]

military and medical history that [Schmidt] presented to the authors of those documents." AR 2; *see Stine*, 92 Fed. Cl. at 796–97.

Second, the new submissions do not show that the Navy erred when evaluating Schmidt's fitness for duty. Navy physical evaluation boards assign disability percentages only to conditions found "unfitting." *See* SECNAVINST 1850.4E § 3301. Here, the physical evaluation board found one condition unfitting at the time of separation: Schmidt's back pain, rated as a separations disability of 10%. AR 76. The physical evaluation board explicitly considered two other conditions—scapulothoracic bursitis and bilateral metatarsophalangeal joint arthralgia—but found that those shoulder and foot conditions "are not separately unfitting and do not contribute to the unfitting conditions." *Id.* After being counseled on these findings, Schmidt accepted them in 1989. AR 78.

Schmidt's new submissions document that he experienced further back pain (his one unfitting condition) as a civilian in the 1990s and 2000s, but they do not demonstrate that the physical evaluation board erred. The physical evaluation board specifically considered how back pain affected Schmidt's fitness for military duty and assigned a disability rating accordingly. Moreover, some of Schmidt's new submissions actually undercut his request. A 1992 letter noted that Schmidt suffered injuries in the Marine Corps, but the letter was prompted by neck, hand, back, and hip pain experienced by Schmidt "since a work accident suffered on February 28, 1992," three years *after* Schmidt's discharge from the Marine Corps. AR 36.

The new submissions also document that Schmidt experienced conditions in addition to back pain in the decades after separation, specifically clavicle/scapula impairment, residuals of a foot injury, a degenerative spine condition, hypertensive heart disease, depressive disorder, and PTSD. AR 2, 17. As to the first two conditions, the physical evaluation board specifically

11

considered shoulder and foot issues, but found that they "do not contribute to the unfitting conditions." AR 76. And Schmidt offers no evidence that the physical evaluation board should have found any of the conditions unfitting in 1989. As the Board for Correction explained to Schmidt, "[t]hat you now suffer from a degenerative condition of your spine which severely limits its range of motion is not material evidence of the severity of your back condition" at separation. AR 2. At that time, rather, the physical evaluation board "found that you were able to flex forward to a point where your fingertips were within six inches from the floor before producing low back pain, which indicates you had a range of motion in excess of ninety degrees of forward flexion." *Id.* (citation omitted). The Board for Correction acknowledged that Schmidt's VA rating of 10% for hypertension increased to a 30% rating for hypertensive heart disease, and that Schmidt was "entitled to VA disability ratings for major depressive disorder and posttraumatic stress disorder on 26 April 2007." *Id.* But as the Board for Correction explained to Schmidt, these facts "do not even suggest that you suffered from heart disease and/or a ratable mental disorder in 1989, or that the hypertension rendered you unfit for duty at the time of your discharge." *Id.*; *see also Stine*, 92 Fed. Cl. at 795 (stating that it "would be erroneous" to equate a Navy rating of 10% for major depressive disorder and anxiety disorder— the two conditions found unfitting—with a VA rating of 70% for anxiety disorder/major depressive disorder/PTSD, which was assigned in part for conditions not found unfitting). Based on this explanation, the Board for Correction reasonably concluded that Schmidt's new submissions did not materially support amending his records. Because the Board's decision was reasonable and reasonably explained, the Court will not disturb it. *See Jackson*, 808 F.3d at 936.

## CONCLUSION

For the foregoing reasons, the Court grants the Secretary of the Navy's Motion for Summary Judgment. Dkt. 33. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

Date: August 8, 2018